1  CHARLES LA BELLA
   KATHLEEN McGOVERN
2  Deputy Chiefs
   THOMAS B. W. HALL
3  MARY ANN McCARTHY
   Trial Attorneys
4  Fraud Section, Criminal Division
   U.S. Department of Justice
5  1400 New York Avenue, NW
   Washington, DC 20530
6  (202) 598-2240

```
_____ FILED         _____ RECEIVED
_____ ENTERED       _____ SERVED ON
                COUNSEL/PARTIES OF RECORD

            JAN  1 5  2013

        CLERK US DISTRICT COURT
          DISTRICT OF NEVADA
   BY: _____ DEPUTY
```

7
8              UNITED STATES DISTRICT COURT
9                  DISTRICT OF NEVADA
                       -oOo-

10  UNITED STATES OF AMERICA,            )
11                                       )   CASE NO.: 2:13-cr-018
                                         )
12              Plaintiff,               )   DATE FILED:
                                         )
13          v.                           )
                                         )
14  **LEON BENZER,**                     )   VIOLATIONS:
    **KEITH GREGORY,**                   )
15  **CHARLES McCHESNEY**                )   18 U.S.C. § 1349 (conspiracy to commit mail
    **BARRY LEVINSON,**                  )   and wire fraud – 1 count); 18 U.S.C. § 1343
16  **RICKY ANDERSON,**                  )   (wire fraud- 14 counts); 18 U.S.C. § 1341
    **MARIA LIMON,**                     )   (mail fraud- 2 counts); 18 U.S.C. § 1001
17  **JOSE LUIS ALVAREZ,**               )   (false statement – 1 count)
    **RUDOLFO ALVAREZ-RODRIGUEZ,**       )
18  **SALVATORE RUVOLO**                 )
    **DAVID BALL, and**                  )
19  **EDITH GILLESPIE,**                 )
                                         )
20              Defendants.              )

21
22                         **INDICTMENT**
23
                          **INTRODUCTION**
24
25  **THE GRAND JURY CHARGES THAT:**
26          At all times material to this Indictment:

                              1

1              1.      Pursuant to Nevada law, a homeowner's association (HOA) is a

2  corporation that governs a common interest community, as defined under NRS 116.021.  A HOA

3  is controlled by the developer until the housing units are sold, at which time the control is

4  transferred to the bona fide homeowners.  Only bona fide homeowners can be members in the

5  HOA.

6              2.      Following transfer of control by the developer, a HOA is governed by a

7  board of directors with a minimum of three members, all of whom must be bona fide

8  homeowners.  The board members are elected by the bona fide homeowners annually.

9              3.      Under Nevada law, HOA board members are fiduciaries.  Any person

10  nominated for the board must make a good faith effort to disclose any financial, business,

11  professional, or personal relationship or interest that would result or would appear to a

12  reasonable person to result in a potential conflict of interest.

13              4.      Consistent with their fiduciary duties and pursuant to Nevada law, HOA

14  board members may not solicit or accept any form of compensation, gratuity, or other

15  remuneration that would improperly influence or reasonably appear to influence the board

16  members' decisions or would result or reasonably appear to result in a conflict of interest.

17              5.      Consistent with their fiduciary duties, the board of directors is empowered

18  to make decisions related to the common interests of the homeowners, including but not limited

19  to: adopting and amending bylaws and budgets; hiring managers, employees, agents, attorneys,

20  independent and contractors; instituting or defending the community in litigation; and causing

21  additional improvements or maintenance repairs to be made.

22              6.      Before hiring individuals and companies to work on behalf of the HOA,

23  the HOA board usually obtains three bids for consideration.  The three bids are usually presented

24  during public board meetings with an opportunity for the homeowners to comment and discuss

25  the issues at hand. The property manager is usually selected first, and then the property manager

26  helps to identify and obtain bids for other services.

7.     Under Nevada law, property managers must earn a Community Association Management (CAM) license before being able to work in the state of Nevada. Property managers have fiduciary obligations to act in the best interest of the community, safeguard financial and confidential information for the community, and disclose any affiliation or financial interest with any other person or business that furnishes goods or services to the community.

8.     Chateau Versailles, Chateau Nouveau, Park Avenue, Jasmine, Vistana, Sunset Cliffs, Palmilla, Pebble Creek, Mission Ridge, Mission Pointe, and Horizons at Seven Hills, common interest communities, were located in Las Vegas, Nevada. Each had an HOA board consisting of at least three people.

9.     From at least in or about August 2003 through at least in or about February 2009, Defendants participated in a scheme to fraudulently obtain loans on properties within these and other HOAs, fraudulently infiltrate the boards of these HOAs, and then award legal and construction work to co-conspirators.

10.     Defendant **LEON BENZER**, a Las Vegas resident, owned Silver Lining Construction Company (SLC), a construction company incorporated in the state of Nevada. SLC purported to specialize in home building and repairs, including repairs involving so-called construction defects (CDs).

11.     Co-Conspirator **Ralph Priola**, charged separately, was an employee of SLC, and one of **BENZER's** principal assistants.

12.     Co-Conspirator A was a law firm in Las Vegas that specialized in construction defect litigation. Co-Conspirator B was a Nevada attorney who owned and controlled Co-Conspirator A. Co-Conspirator B was, along with **BENZER**, a mastermind of the conspiracy and also one of its principal sources of funding. Co-Conspirator B participated in the conspiracy until the death of Co-Conspirator B in March 2012. **BENZER** and his co-conspirators, through the use of "straw purchasers" via financed transactions, caused the

1    purchase or transfer of approximately 37 condominium units in an effort to take control of HOA

2    boards through the nomination and election of these straw purchasers as HOA board members.

3    The straw purchasers, once elected were under the direction and control of **BENZER** and SLC.

4    As a result of the scheme, 33 of these 37 condominiums went into foreclosure.

5          13.    Defendant **KEITH GREGORY**, a Las Vegas resident, was an attorney

6    licensed in Nevada who did work for **BENZER** and SLC, and who, through the actions of SLC

7    controlled boards, was hired and acted as general counsel at the Vistana and Sunset Cliffs HOAs

8    and who, at the direction of SLC and **BENZER**, purported to represent an SLC and **BENZER**

9    controlled board candidate in an action against an HOA board that SLC and **BENZER** were

10    attempting to control.

11          14.    Defendant **CHARLES McCHESNEY (AKA "CHUCK**

12    **McCHESNEY")**, a Las Vegas resident, was a private investigator who began working for

13    **BENZER** in 2004, and a straw purchaser and SLC controlled board member at the Chateau

14    Nouveau HOA.

15          15.    Defendant **BARRY LEVINSON**, a Las Vegas resident, was an attorney

16    licensed in Nevada who did work for SLC and **BENZER** and who, through the actions of SLC

17    and **BENZER** controlled boards, acted as general counsel at the Park Avenue and Pebble Creek

18    HOAs and who, at the direction of SLC and **BENZER**, purported to represent an HOA in an

19    effort to secure board positions for SLC and **BENZER** controlled candidates.

20          16.    Defendant **RICKY ANDERSON**, a Texas resident, was a straw purchaser

21    and an employee of SLC and **BENZER** who, in an e-mail to **BENZER** described his duties as,

22    among others, "HOA Enforcer."

23          17.    Defendant **MARIA LIMON**, a North Las Vegas resident, was a straw

24    purchaser and worked as an unlicensed property manager at one of the SLC owned and

25    controlled property management companies used during the conspiracy.

26          18.    Defendant **JOSE LUIS ALVAREZ (AKA "LUIS ALVAREZ")**, a

1    Henderson resident, was employed by SLC, acted as a straw purchaser at certain HOAs targeted

2    by the conspirators, was an SLC controlled board member, and assisted in the rigging of at least

3    one HOA election.

4             19.     Defendant **RODOLFO ALVAREZ (AKA "RUDY ALVAREZ")**, a Las

5    Vegas resident and brother of **JOSE LUIS ALVAREZ**, was employed by SLC, a straw

6    purchaser at the Vistana HOA, and an SLC controlled board member.

7             20.     Defendant **SALVATORE RUVOLO (AKA "SAM RUVOLO" and**

8    **"SAL RUVOLO")**, a Henderson resident, was a straw purchaser and an SLC controlled board

9    member at the Park Avenue and Chateau Nouveau HOAs.

10           21.     Defendant **DAVID BALL**, a Las Vegas resident, was a real estate agent

11    who was a straw purchaser and an SLC controlled board member at Chateau Nouveau, and a

12    recruiter of another straw purchaser and SLC controlled board member at Chateau Nouveau.

13           22.     Defendant **EDITH GILLESPIE**, a Las Vegas resident, was **BENZER's**

14    half-sister, a straw purchaser at a HOA, and a recruiter of other straw purchasers and board

15    candidates on behalf of **BENZER**.

16 **<u>COUNT ONE</u>**

17 **<u>THE CONSPIRACY</u>**

18           23.     From at least in or about August 2003 through at least in or about

19    February 2009, in the District of Nevada and elsewhere, Defendants

**LEON BENZER,<br>
KEITH GREGORY,<br>
CHARLES McCHESNEY,<br>
BARRY LEVINSON,<br>
RICKY ANDERSON,<br>
MARIA LIMON,<br>
JOSE LUIS ALVAREZ,<br>
RODOLFO ALVAREZ-RODRIGUEZ,<br>
SALVATORE RUVOLO<br>
DAVID BALL, and<br>
EDITH GILLESPIE,**

1 with others known and unknown to the United States, did knowingly and intentionally conspire,

2 combine, confederate and agree to commit certain offenses against the United States, that is:

3         a.      to devise and intend to devise a scheme and artifice to defraud and to

4 obtain money and property by means of materially false and fraudulent pretenses, representations

5 and promises, that affected a financial institution; and for the purpose of executing such scheme

6 and artifice, each Defendant or their coconspirators did knowingly place or caused to be placed

7 in a post office and authorized depository for mail matter a thing to be sent and delivered by the

8 U.S. Postal Service or any private or commercial interstate carrier, in violation of Title 18,

9 United States Code, Section 1341; and,

10         b.      to devise and intend to devise a scheme and artifice to defraud and to

11 obtain money and property by means of materially false and fraudulent pretenses,

12 representations, and promises, that affected a financial institution; and for the purpose of

13 executing such scheme and artifice, each Defendant or their coconspirators did knowingly

14 transmit and cause to be transmitted by means of wire communication in interstate and foreign

15 commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, United States

16 Code, Section 1343.

17 **OBJECTS OF THE CONSPIRACY**

18         24.      The objects of the conspiracy, of which Defendants **LEON BENZER,**

19 **KEITH GREGORY, CHARLES McCHESNEY, BARRY LEVINSON, RICKY**

20 **ANDERSON, MARIA LIMON, JOSE LUIS ALVAREZ, RODOLFO ALVAREZ-**

21 **RODRIGUEZ, SALVATORE RUVOLO, DAVID BALL,** and **EDITH GILLESPIE** were

22 members, which began from at least as early as in or around August 2003 and continued through

23 at least in or around February 2009, were for the co-conspirators to:

24         a.      facilitate the purchase of units in the housing developments identified

25 above by straw purchasers acting at the secret direction of the conspirators;

26         b.      employ the straw purchasers to elect HOA board candidates designated by

1   the co-conspirators, thereby gaining the control of HOA boards;

2            c.      manipulate and influence the conduct of HOA business including, but not

3   limited to, the appointment of designated property managers, the hiring of designated lawyers

4   and law firms, and the hiring of designated contractors; and,

5            d.      unlawfully enrich the co-conspirators as a result of the scheme by causing

6   the puppet HOA boards to award legal, construction, and other work to entities controlled by co-

7   conspirators.

8                                    **MANNER AND MEANS**

9            25.     In order to achieve the objects of the conspiracy, Defendants **LEON**

10  **BENZER, KEITH GREGORY, CHARLES McCHESNEY, BARRY LEVINSON, RICKY**

11  **ANDERSON, MARIA LIMON, JOSE LUIS ALVAREZ, RODOLFO ALVAREZ-**

12  **RODRIGUEZ, SALVATORE RUVOLO, DAVID BALL,** and **EDITH GILLESPIE** and

13  others known and unknown to the Grand Jury, used the following manner and means, among

14  others:

15           a.      The Defendants and their co-conspirators enlisted real estate agents to

16  identify condominium units within HOA communities for purchase by co-conspirators in

17  connection with the scheme.

18           b.      The co-conspirators enlisted individuals to act as straw purchasers to

19  complete and sign mortgage loan applications to purchase properties within the HOA

20  communities on behalf of the true beneficial owners, and made false and fraudulent statements

21  that concealed the identity and financial interest of the true beneficial owners of the properties

22  from banks, mortgage companies, HOAs, and bona fide homeowners.  Defendant **LEON**

23  **BENZER** – and at certain times relevant to this Indictment, Co-Conspirator B – funded the

24  down payments, and the co-conspirators sent emails and spreadsheets, many via interstate wire,

25  outlining the purchase and payment terms (two of which were entitled "Condosinlinetobuy" and

26  "Money back to LB on cash deals.")

1        c.     The co-conspirators used several licensed notaries to assist the notarizing

2 of documents, at times fraudulently, in furtherance of the conspiracy without the signatory

3 appearing before him/her or without entering the transaction into his/her notary book as required

4 by his/her State of Nevada notary license.

5        d.     Various co-conspirators joined the conspiracy when they agreed to

6 become straw purchasers at a particular HOA. Many co-conspirators would and did sign and

7 submit false and fraudulent loan applications and supporting documents to financial institutions

8 in order to finance and close on the properties. The co-conspirators, through the use of "straw

9 purchasers" would and did cause the purchase or transfer of approximately 37 condominium

10 units, 33 of which went into foreclosure as a result of the scheme.

11        e.     Once the straw purchases were complete, the beneficial owners and co-

12 conspirators often rented the units. In most instances, the beneficial owners (not the straw

13 purchasers) received the rental payments and continued to pay the mortgages and various

14 expenses associated with the straw purchases.

15        f.     In furtherance of the scheme, in or about August 2005, August 2006,

16 January 2007, and February 2007, a co-conspirator opened and managed approximately six bank

17 accounts at the request and pursuant to the instructions of **LEON BENZER** and SLC under the

18 names of limited liability companies controlled by **BENZER** in order to, among other things,

19 conceal the identity of the beneficial owners. The co-conspirators would send and cause to be

20 sent numerous interstate wire transfers made to and from these accounts to fund the conspiracy

21 and to pay co-conspirators for their participation in the scheme. Defendant **BENZER**, together

22 with Co-Conspirators A, B and **Priola** would and did cause deposits of approximately

23 $1,981,077, $700,000 and $300,000 into these accounts, among others. In excess of

24 approximately $8,000,000 moved through these six accounts.

25        g.     Several conspirator straw purchasers allowed the co-conspirators to

26 transfer a 1% or greater ownership interest in the purchased unit to another co-conspirator to

8

1   make it appear that the new owner was a bona fide homeowner in the HOA and was qualified to

2   run for a position on the HOA board of directors.

3             h.     The co-conspirators would and did refinance the properties in order to

4   increase the conspiracy's capital from which conspirators could be paid for their services and

5   additional condominiums could be purchased, often submitting false, fraudulent or misleading

6   information to the financial institutions.

7             i.     The conspirator straw purchasers and those co-conspirators who acquired

8   a transferred interest in the properties often agreed to run for election to HOA boards.  These co-

9   conspirators, including Defendants **JOSE ALVAREZ, RODOLFO ALVEREZ-**

10   **RODRIGUEZ, RICKY ANDERSON, MARIA LIMON, CHARLES McCHESNEY,**

11   **SALVATORE RUVOLO,** and **DAVID BALL**, were paid or promised cash, checks, or things

12   of value for their participation, all of which resulted in a personal financial benefit to the co-

13   conspirators.

14             j.     To ensure the co-conspirators would win the elections, the co-conspirators

15   often employed deceitful tactics, such as creating false phone surveys to gather information

16   about homeowners' voting intentions, using mailing lists to vote on behalf of out-of-town

17   homeowners who were unlikely to participate in the elections, and submitting fake and forged

18   ballots.

19             k.     Certain co-conspirators assisted in rigging certain HOA board elections

20   by, among other things, preparing forged ballots for out-of-town homeowners and either

21   transported the ballots or caused the ballots to be transported or mailed to California and

22   thereafter to have the ballots mailed back to Las Vegas from various locations around California,

23   to make it appear that the ballots were completed and mailed by bona fide homeowners residing

24   outside Nevada. The co-conspirators also hired private investigators to find "dirt" on bona fide

25   candidates in order to influence the elections.  Certain other co-conspirators – who were

26   attorneys – assisted the conspiracy by serving as general counsel for HOAs and purporting to act

1  in the interest of the homeowners, while in reality they were serving the interests of **BENZER**

2  and the other conspirators.

3        l.    The co-conspirators attempted to create the appearance that the elections

4  were legitimate and free from corruption by hiring "independent" attorneys as "special election

5  masters," to supervise the HOA board elections.  These "special election masters," working with

6  the HOAs' licensed property managers, were obligated to: (i) contact the bona fide homeowners

7  to inform them of the election; (ii) mail the bona fide homeowners election ballots and voting

8  instructions; (iii) collect and secure those election ballots returned by mail until the date of the

9  election; and (iv) preside over the HOA board election, including supervising the counting of

10  ballots.  However, in truth and fact, certain "special election masters" were paid in cash, check,

11  or promised things of value, by or on behalf of **LEON BENZER** and SLC for their assistance in

12  allowing co-conspirators to rig the elections by allowing the co-conspirators access to the ballots

13  after they were collected but before they were counted.

14        m.    Once elected, the straw purchasers and SLC controlled board members

15  would and did meet with co-conspirators in order to manipulate board agendas as well as board

16  votes, including the selection of property managers, contractors, general counsel and attorneys to

17  represent the HOA.

18                                 **OVERT ACTS**

19        26.    The following overt acts were committed by at least one of the

20  conspirators, in the District of Nevada and elsewhere, in furtherance of the conspiracy:

21        a.    On or about September 7, 2005, **RUVOLO** was a straw purchaser of unit

22  1199 at the Chateau Nouveau HOA.

23        b.    On or about October 5, 2005, **J. ALVAREZ** was a straw purchaser of unit

24  2514 at Seven Hills HOA.

25        c.    On or about November 3, 2005, **McCHESNEY** sold unit 1122 to a SLC

26  employee.

1       d.      On or about November 18, 2005, **BENZER** and other co-conspirators

2 caused the transfer of $183,000 for the purchase of condominiums.

3       e.      On or about November 18, 2005, **RUVOLO** was a straw purchaser of unit

4 401 at Park Avenue.

5       f.      On or about December 13, 2005, **GILLESPIE** was a straw purchaser at

6 Chateau Versailles HOA.

7       g.      On or about March 30, 2007, **BALL** was a straw purchaser of and earned

8 a broker's commission on unit 2028 at Chateau Nouveau HOA.

9       h.      On or about September 21, 2007, **BENZER, R. ALVAREZ** and other co-

10 conspirators caused the Vistana mobilization fee of $1,098,000 to be paid to **BENZER**.

11       i.      On or about September 24, 2007, **BENZER** caused a bribe payment of

12 $10,000 to be made to **GREGORY**.

13       j.      On or about October 30, 2007, **BENZER, R. ALVAREZ** and other co-

14 conspirators caused the Vistana CD settlement funds of $1,190,056.80 to be paid to **BENZER**.

15       k.      On or about January 10, 2008, **BENZER, R. ALVAREZ** and other co-

16 conspirators caused the Vistana CD settlement funds of $1,189,151 to be paid to **BENZER**.

17       l.      On March 5, 2008, **BALL** sent an email via interstate communication to,

18 among others, **RUVOLO** and **MCCHESNEY**, subject line "RE: Chateau Nouveau-1001, 1341,

19 bldg 47," authorizing repairs to be conducted by Silver Lining Construction.

20       m.      On or about March 5, 2008, **MCCCHESNEY** sent an email via interstate

21 communication, subject line "RE: Chateau Nouveau-1001, 1341, bldg 47," authorizing repairs to

22 be conducted by Silver Lining Construction.

23       n.      On or about April 15, 2008, **BENZER** and other co-conspirators caused

24 the mailing of forged ballots for the Park Avenue HOA election in which **RUVOLO** and other

25 co-conspirators ran for the HOA board.

26       o.      On or about July 9, 2008, **LEVINSON** sent a letter to Castle Management

1  terminating the company's contract at Pebble Creek HOA.

2            p.    On or about September 18, 2008, **GREGORY** sent an email via interstate

3  communication to **BENZER**, subject line "Sunset Cliffs," regarding a petition for recall at the

4  Sunset Cliffs HOA.

5          All in violation of Title 18, United States Code, Section 1349.

6  **COUNTS 2 THROUGH 15**

7  **WIRE FRAUD**

8     27.    The Grand Jury realleges and incorporates by reference paragraphs 1 through 26.

9     28.    From at least in or about August 2003 through at least in or about February 2009,

10  in the District of Nevada and elsewhere, Defendants

11  **LEON BENZER,**
**JOSE LUIS ALVAREZ,**

12  **RODOLFO ALVAREZ-RODRIGUEZ,**

13  **DAVID BALL,**
**EDITH GILLESPIE,**

14  **KEITH GREGORY,**

15  **CHARLES McCHESNEY, and**
**SALVATORE RUVOLO**

16  with others known and unknown to the United States, did knowingly and intentionally devise

17  and intend to devise a scheme and artifice to defraud and to obtain money and property by means

18  of materially false and fraudulent pretenses, representations, and promises, that affected a

19  financial institution; and for the purpose of executing such scheme and artifice, the following

20  Defendants, acting in concert with and aiding the others, did knowingly transmit and cause to be

21  transmitted by means of wire communication in interstate and foreign commerce, writings, signs,

22  signals, pictures, and sounds:

23  **WIRE TRANSFERS**

| COUNT | DEFENDANT(S) | APPROX. DATE | WIRE COMMUNICATION |
|---|---|---|---|
| 2 | BENZER, RUVOLO | 9/7/05 | Wire for $180,215.00 from Bank of America in New York via Fedwire to US Bank in Portland, Oregon |

| 3 | BENZER, J. ALVAREZ | 10/10/05 | Wire for $177,365.78 from Fremont Investment and Loan in California, through New York via Fedwire to First American Trust Company in California. |
|---|---|---|---|
| 4 | BENZER, McCHESNEY | 11/3/05 | Wire for $234,666.36 from Deutsche Bank Trust Companies America in New York to First American Trust Company in California. |
| 5 | BENZER | 11/18/05 | Wire for $183,000 from Strategic One Consulting Group LLC's account #XXXXXXX8090 at Wells Fargo Bank, in California to Blue Sky Mgmt's account XXXXX0160 at Bank of North Las Vegas in Nevada. |
| 6 | BENZER, RUVOLO | 11/18/05 | Wire for $200,110.98 from JP Morgan Chase through New York via Fedwire to First American Trust Company in California. |
| 7 | BENZER, GILLESPIE | 12/13/05 | Wire for $233,174.22 from Lehman Brothers Bank FSB via Fedwire to First American Trust Company in California |
| 8 | BENZER, BALL | 3/30/07 | Wire for $8,990.00 from Bank of America via Fedwire to Washington Mutual Bank. |
| 9 | BENZER, R. ALVAREZ | 9/21/07 | Wire for $1,098,000 from Vistana's account #XXXX0474 at Wachovia Bank via Portland, Oregon to BENZER's account XXXX-XXXX-7214 at U.S. Bank National Association in Las Vegas, Nevada. |
| 10 | BENZER, GREGORY | 9/24/07 | Wire for $10,000 from BENZER's personal account #XXXX-XXXX-7214 at U.S. Bank National Association to GREGORY's personal account XXXXXX0590 at Wells Fargo Bank. |
| 11 | BENZER, R. ALVAREZ | 10/30/07 | Wire for $1,190,056.80 from Vistana's account #XXXX0474 at Wachovia Bank via Portland, Oregon to BENZER's account XXXX-XXXX-7214 at U.S. Bank National Association in Las Vegas, Nevada. |
| 12 | BENZER, R. ALVAREZ | 1/10/08 | Wire for $1,189,151 from Vistana's account #XXXX0474 at Wachovia Bank, via Fedwire to Silver Lining Investment's account XXXXXX9004 at First National Bank of Nevada |

**EMAILS**

| COUNT | DEFENDANT | APPROX. DATE | WIRE COMMUNICATION |
|---|---|---|---|
| 13 | BENZER, BALL, RUVOLO, MCCHESNEY | 3/5/08 | BALL sent an email via interstate communication to, among others, RUVOLO and MCCHESNEY, subject line "RE: Chateau Nouveau-1001, 1341, bldg 47," authorizing repairs to be conducted by Silver Lining Construction |
| 14 | BENZER, MCCHESNEY | 3/5/08 | MCCCHESNEY sent an email via interstate communication, subject line "RE: Chateau Nouveau-1001, 1341, bldg 47," authorizing repairs to be conducted by Silver Lining Construction |
| 15 | BENZER, GREGORY | 9/18/08 | GREGORY sent an email via interstate communication to BENZER, subject line "Sunset Cliffs," regarding a petition for recall at the Sunset Cliffs HOA |

In violation of Title 18, United States Code, Section 1343.

**COUNTS 16 THROUGH 17**

**MAIL FRAUD**

29.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 26.

30.     From at least in or about August 2003 through at least in or about February 2009, in the District of Nevada and elsewhere, Defendants

**LEON BENZER,**
**BARRY LEVINSON,**
and
**SALVATORE RUVOLO**

with others known and unknown to the United States, did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, that affected a financial institution; and for the purpose of executing such scheme and artifice, the following

14

Defendants, acting in concert with and aiding the others, did knowingly place or caused to be placed in a post office and authorized depository for mail matter a thing to be sent and delivered by the U.S. Postal Service or any private or commercial interstate carrier:

| Count | Defendant | Approx. Date | MAILING |
|---|---|---|---|
| 16 | **BENZER, RUVOLO** | 4/15/08 | Eleven ballots mailed from Long Beach, CA to Platinum in Las Vegas, NV. |
| 17 | **BENZER, LEVINSON** | 7/9/08 | Letter from **BARRY LEVINSON** to Castle Management terminating contract at Pebble Creek. |

In violation of Title 18, United States Code, Section 1341.

## COUNT 18

## FALSE STATEMENT TO THE FEDERAL BUREAU OF INVESTIGATION

31.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 26.

32.     On or about August 26, 2009, in North Las Vegas, Nevada, within the District of Nevada, in a matter within the jurisdiction of the executive branch of the Government of the United States,

### MARIA LIMON

knowingly and willfully made and caused to be made a material false, fictitious, and fraudulent statement and representation, that is, during the course of an official investigation being conducted by the Federal Bureau of Investigation and Las Vegas Metropolitan Police Department, defendant **LIMON** falsely stated in substance that she did not communicate with **BENZER** regarding Crystal Management and that she did not know **BENZER** was behind Crystal Management, when in truth and in fact, as **LIMON** well knew, **BENZER** had funded and controlled Crystal Management, which was a property manager at Chateau Nouveau and other HOAs, operating at **BENZER**'s direction to further the objects of the scheme outlined above.

In violation of Title 18, United States Code, Section 1001(a)(2).

### FORFEITURE ALLEGATION ONE

Conspiracy to Commit Wire and Mail Fraud

1.     The allegations contained in Count One of this Criminal Indictment are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     Upon conviction of the felony offense charged in Count One of this Criminal Indictment,

**LEON BENZER,**<br>
**KEITH GREGORY,**<br>
**CHARLES McCHESNEY**<br>
**BARRY LEVINSON,**<br>
**RICKY ANDERSON,**<br>
**MARIA LIMON,**<br>
**JOSE LUIS ALVAREZ,**<br>
**RODOLFO ALVAREZ-RODRIGUEZ,**<br>
**SALVATORE RUVOLO**<br>
**DAVID BALL,** and<br>
**EDITH GILLESPIE,**

defendants herein, shall forfeit to the United States of America, any property which constitutes or is derived from, proceeds traceable to violations of Title 18, United States Code, Sections 1341 and 1343, specified unlawful activities as defined in Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1)(B); and Title 18, United States Code, Section 1349, conspiracy to commit such offenses, a criminal forfeiture money judgment up to $24,871,109.86 in United States Currency.

3.     If any property subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants -

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

1        c.      has been placed beyond the jurisdiction of the court;

2        d.      has been substantially diminished in value; or

3        e.      has been commingled with other property that cannot be divided without

4              difficulty;

5   it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

6   seek forfeiture of properties of the defendant for the criminal forfeiture money judgment up to

7   $24,871,109.86  in United States Currency.

8         All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United

9   States Code, Section 2461(c); Title 18, United States Code, Sections 1341 and 1343, specified

10   unlawful activities as defined in Title 18, United States Code, Section 1956(c)(7)(A) and

11   1961(1)(B); Title 18, United States Code, Section 1349; and Title 21, United States Code,

12   Section 853(p).

13

14   **FORFEITURE ALLEGATION TWO**

15   Conspiracy to Commit Wire and Mail Fraud

16        1.      The allegations contained in Count One of this Criminal Indictment are hereby re-

17   alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to the

18   provisions of Title 18, United States Code, Section 982(a)(2)(A).

19        2.      Upon conviction of the felony offense charged in Count One of this Criminal

20   Indictment,

21                     **LEON BENZER,**
                  **KEITH GREGORY,**

22                  **CHARLES McCHESNEY**
                  **BARRY LEVINSON,**

23                   **RICKY ANDERSON,**
                  **MARIA LIMON,**

24                 **JOSE LUIS ALVAREZ,**
          **RODOLFO ALVAREZ-RODRIGUEZ,**

25                  **SALVATORE RUVOLO**
                  **DAVID BALL,** and

26                 **EDITH GILLESPIE,**

1   defendants herein, shall forfeit to the United States of America, any property constituting, or

2   derived from, proceeds obtained directly or indirectly as a result of violations of Title 18, United

3   States Code, Section 1341; Title 18, United States Code, Section 1343; and Title 18, United

4   States Code, Section 1349, conspiracy to commit such offenses, a criminal forfeiture money

5   judgment up to $24,871,109.86 in United States Currency.

6         3.     If any property subject to forfeiture pursuant to Title 18, United States Code,

7   Section 982(a)(2)(A), as a result of any act of omission of the defendants –

8                 a.     cannot be located upon the exercise of due diligence;

9                 b.     has been transferred or sold to, or deposited with, a third party;

10                 c.     had been placed beyond the jurisdiction of the court;

11                 d.     has been substantially diminished in value; or

12                 e.     had been commingled with other property that cannot be divided without

13                       difficulty;

14   it is the intent of the United States of America, pursuant to Title 21, United States Code, Section

15   853(p), to seek forfeiture of any properties of the defendant up to $24,871,109.86 in United

16   States Currency.

17   .  .  .

18   .  .  .

19   .  .  .

20   .  .  .

21   .  .  .

22   .  .  .

23   .  .  .

24   .  .  .

25   .  .  .

26   .  .  .

1    All pursuant to Title 18, United States Code, Section 982(a)(2)(A); Title 18, United

2  States Code, Sections 1341, 1343, and 1349; and Title 21, United States Code, Section 853(p).

3

4    **DATED:** January, _15_, 2013

5

6                           **A TRUE BILL:**

7

8                           _/s/_____
                            FOREPERSON

9

10

11  DENIS J. McINERNEY
    Chief
12  Fraud Section, Criminal Division
    U.S. Department of Justice
13

14  CHARLES G. LA BELLA
    KATHLEEN McGOVERN
15  Deputy Chiefs
    THOMAS B. W. HALL
16  MARY ANN McCARTHY
    Trial Attorneys
17

18

19

20

21

22

23

24

25

26