CHARLES LA BELLA
Deputy Chief
THOMAS B. W. HALL
ALISON L. ANDERSON
Trial Attorneys
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue, NW
Washington, DC 20530
(202) 616-1682

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
### -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) CASE NO. 2:13-cr-00018-JCM-GWF |
| Plaintiff, | ) |
| | ) **OPPOSITION TO LAS VEGAS REVIEW-JOURNAL's MOTION TO DISSOLVE PROTECTIVE ORDERS (DOC. NO. 635)** |
| v. | ) |
| LEON BENZER, *et al.* | ) |
| Defendants. | ) |

## I.    INTRODUCTION

The United States opposes the Las Vegas Review-Journal's ("Review-Journal") motion to dissolve the protective orders entered on January 29, 2013 ("First Protective Order") and May 13, 2014 ("Second Protective Order"). There exists no presumptive First Amendment right of access to documents produced or made available during discovery; the Review-Journal is attempting to accomplish in effect an "end-run" around the Freedom of Information Act by asking the Court to dissolve these protective orders. The Court should deny the motion to dissolve.

## II.   PROCEDURAL HISTORY

The above-captioned case, along with a number of related prosecutions, arose from an expansive conspiracy to defraud homeowners' associations in Las Vegas. Due to the scope of the conspiracy and the number of participants – the Department of Justice has charged forty-three individuals in connection with the fraud – the volume of documents produced in discovery was

significant: the government produced approximately six million pages in discovery, including bank records, mortgage files, emails, documents seized during the execution of search warrants, property records, FBI and Las Vegas Metropolitan Police Department memoranda of interviews ("MOIs"), audio and video recordings, and other types of documents.

In order to facilitate the discovery process, all parties stipulated to the First Protective Order on January 28, 2013. (Doc. No. 45.) The First Protective Order allowed the government to provide documents ("Protected Documents") containing personal identifying information, such as social security numbers, bank account numbers, and addresses of witnesses and victims, in unredacted form to the defendants, as redacting the documents would have prevented the defendants from gaining prompt access to the materials. (*Id.* at 2.) The First Protective Order allowed this transfer of Protected Documents to defendants without redaction on the condition that the only people who would have access to the documents would be the "defendants, attorneys of record and attorney's paralegals, investigators, experts, and secretaries employed by the attorneys of record and performing on behalf of the defendant." (*Id.* at 3.) Counsel for the defense were also required to return any Protected Documents to the government no more than thirty days after the last appeal was finalized. (*Id.*) The First Protective Order was entered by the Court on January 29, 2013. (Doc. No. 46.) Only a few documents covered by the First Protective Order were filed with the court under seal; the vast majority of the documents produced pursuant to this order were never filed.

On May 12, 2014, the parties stipulated to a Second Protective Order. (Doc. No. 281.) The Second Protective Order covered another set of Protected Documents that contained sensitive information. (Doc. No. 281 at 2.) The Second Protective Order required defense counsel to review the Protected Documents at the United States Attorney's Office in Las Vegas, rather than producing copies of the documents containing the sensitive material. (*Id.*) The Court entered the Second Protective Order on May 13, 2015. (Doc. No. 283.) Ultimately, most of the defendants' attorneys chose not to review the material covered by the Second Protective Order. None of the documents covered by the Second Protective Order were ever filed with the court or otherwise incorporated into the court's proceedings. These materials were included in materials available to

the defense for inspection in an excess of caution. It is not at all clear given their at best remote connection to this investigation if these materials were discoverable at all.

**III.   ARGUMENT**

The United States produced the documents under the two protective orders in order to protect the individuals whose information was contained within these documents, many of whom are victims in this matter. As the rationale to protect these people still exists, the United States opposes the Review-Journal's motion to dissolve the First and Second Protective Orders. The First Protective Order should remain in place and the Review-Journal should following the necessary procedures for requesting these documents under the Freedom of Information Act, 5 U.S.C. § 522. In addition, the Second Protective Order should remain in force because there are specific harms, articulated *infra*, that will result from the dissolution of the order.

**A.  Legal Standard.**

Traditionally, information uncovered in pretrial discovery is not a public source of information. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). Although there is a presumptive right of access to materials submitted in open court, this presumption of access does not apply to materials provided during discovery. *Id.*; *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002); *see also United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation"). And when a court does issue a protective order for information produced during discovery, the protective order is not subject to "exacting First Amendment scrutiny" and does not have to overcome a presumption of access. *Seattle Times Co.*, 467 U.S. at 33 ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information"); *Phillips*, 307 F.3d at 1213 ("Applying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders"). The cases cited by Review-Journal for the proposition that the public and press should have access to

court proceedings are inapposite because these cases applied this presumption of access to judicial records or hearings conducted in open court and not documents produced in discovery but never filed with the court.

The district court has the power to issue "protective and modifying orders" regulating discovery. Fed. R. Crim. P. 16(d)(1). Specifically, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." *Id. See also Alderman v. United States*, 394 U.S. 165, 195 (1969) ("The trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials").

In analyzing arguments raised in motions challenging such protective orders, courts have referenced the analogous case law in civil cases, although the Ninth Circuit has not ruled that the civil standards apply to criminal protective orders. *United States v. Patkar*, No. CR. 06-00250 JMS, 2008 WL 233062, at *4 (D. Haw. Jan. 28, 2008) ("This court is not convinced that the Ninth Circuit would apply these civil standards to protective orders in criminal actions. . . . The court nonetheless finds reference to Federal Rule of Civil Procedure 26(c) a useful tool"). Thus, the definition of good cause developed in the context of protective orders issued pursuant to Federal Rule of Civil Procedure 26(c) illuminates the standard of good cause for protective orders entered under Federal Rule of Criminal Procedure 16(d)(1).

"For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips*, 307 F.3d at 1210-11 (9th Cir. 2002). Then, if the Court finds that the "particularized harm [which] will result from disclosure of information to the public" outweighs the public interest in disclosure, it may issue a protective order. *Id.* at 1311. Once a protective order is entered, the court should be cautious about modifying or dissolving the order because "among the goals furthered by protective orders is reducing conflict over discovery and facilitating the flow of information through discovery. Where that has happened, changing the ground rules later is to be avoided because protective orders that cannot be relied upon will not foster cooperation through discovery." *Foltz v. State Farm Mut. Auto. Ins.*

*Co.*, 331 F.2d 1122, 1137 (9th Cir. 2003) (internal citations and quotations omitted). The Ninth Circuit has found that this reliance interest is not sufficient to maintain a protective order if the order is a "blanket" order that covers all information produced during discovery, but that the reliance interest in an order that covers documents that deal with a "narrow" issue is sufficient to uphold that protective order. *Id.* (holding that the protective order covering documents related to the issue of whether plaintiff's counsel should be disqualified must be upheld, but the blanket protective order covering all documents produced in the case should be dissolved because there was not a sufficient reliance interest and the litigant could not show good cause).

If all parties stipulated to a protective order, then there is no need to make a showing of good cause at the time the order is entered. *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006). Once the order is challenged, however, the party who wants the court to continue enforcing the order must demonstrate there is good cause. *Id.* at 1180; *In re Roman Catholic Archbishop of Portland Oregon*, 661 F.3d 417 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1867 (2012). This entails demonstrating "that specific prejudice or harm will result if no protective order is granted." *Foltz*, 331 F.2d at 1130 (internal citations omitted). This showing of good cause must be substantiated "by specific examples or articulated reasoning" and be "supported where possible by affidavits" and "specific demonstrations of fact." *Id.* at 1130-31 (internal citations omitted). If the party opposing the dissolution of the stipulated protective order satisfies the good cause standard, then the documents will remained sealed and enjoy the same protections as documents protected by an order issued by the court. *Id.* at 1180.

If the protected document was filed under seal and attached to a non-dispositive motion, then the protective order continues to be enforced. *Phillips*, 307 F.3d at 1213. If, however, the protected document was attached to a dispositive motion, then the protective order will only remain in force if the party advocating for the continued protection satisfies a "compelling reasons" standard. *Kamakana*, 447 F.3d at 1181. This standard is more demanding than the good cause standard. *Id.* at 1180. A compelling reason exists "when court records might have become a vehicle

for improper purposes, such as to gratify private spite, promote public scandal, commit libel, or release trade secrets." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d at 429.

### B. The United States Does Not Oppose The Unsealing of Documents Covered by the First Protective Order Later Filed With the Court Under Seal.

The vast majority of the documents covered by the First Protective Order were never filed with the Court. A few documents, however, were filed under seal. The Review-Journal has moved separately to unseal these docket entries (Doc. No. 636) and the United States does not oppose the unsealing of these filed documents.

### C. There is Good Cause for the First Protective Order

For the documents subject to the First Protective Order that were never filed with the Court, there is no public right to access and there remains good cause for the order. The documents contain personal identifying information, including social security numbers, drivers' license numbers, dates of birth, bank account numbers, bank records, and addresses of participants, witnesses and victims in this case. (Doc. No. 45 at 2.) If the First Protective Order was dissolved, defense counsel and any others persons with access to these documents (i.e. paralegals, investigators, experts) could make these documents freely available in unredacted form to anyone who requests them. There are very clear and specific harms that will result: all individuals whose personal identifying information is released would be incredibly vulnerable to identity theft and this information could be used to perpetrate fraud against other parties, including financial institutions. This information also makes these individuals, including victims, more vulnerable to inquiry and harassment. Thus, there is good cause for the protective order and it should not be dissolved. Furthermore, there is no public interest in the dissemination of this personal identifying information.

The Review-Journal should instead obtain these documents through the process created by Congress for such a purpose: the Freedom of Information Act ("FOIA"). Such a request would allow the United States to fulfill its designated role and responsibilities under FOIA and release the documents covered by the First Protective Order according to statutorily-created rules. It would

also prevent the Review-Journal from doing an "end-run" around the provisions of FOIA by directly accessing the Protected Documents from the defense counsel's database.

Congress created FOIA to provide a mechanism for individuals and press outlets to seek information from the government and for the government to provide that information after redacting classified and personal identifying information. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989); H.R. Rep. No. 89-1497, at 6 (1966). FOIA contains specific statutorily-created exemptions for certain types of materials. For example, Exemption 6 permits the redaction of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(6). Furthermore, if the government agency redacts documents pursuant to any of these pre-defined exemptions, it must submit a *Vaughn* Index, which is a "sufficiently detailed description of each redacted document and an explanation of the reasons for the redactions." *Hall v. U.S. Dep't of Justice*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008). Thus, FOIA provides a clearly pre-defined framework for releasing documents whose contents implicate the very concerns at issue here. Since FOIA provides a legislatively-created channel for the government to release documents to the public, a FOIA request is both a more appropriate and more efficient method for the Review-Journal to seek the information it desires.

Although not directly addressed by the Ninth Circuit, other courts have referenced the interplay between protective orders and freedom of information legislation. *See, e.g., Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 791 (3d Cir. 1994) (suggesting that protective orders can be drafted so that "the scope of the confidentiality order does not extend so as to prevent disclosure pursuant to any freedom of information law"). The current version of the First Protective Order would not prevent the United States from releasing the Protected Documents pursuant to a valid FOIA request (although other statutory FOIA exceptions may apply).

### D. The Second Protective Order Should Not Be Vacated Because Good Cause and a Strong Reliance Interest Exist

Good cause exists for the Second Protective Order and the United States has a strong reliance interest in the protective order such that the presumption should be against dissolving the order.

The Second Protective Order protects documents related to an investigation conducted by the Department of Justice's Public Integrity Section regarding allegations involving, among others, personnel of the U.S. Attorney's Office for the District of Nevada as well as other local public figures (collectively, the "PIN File"). This investigation resulted in no criminal charges or disciplinary action concerning any government employee. Nor were any charges brought against any non-government individuals or public figures involved in the investigation. There is a very specific risk of harm and prejudice if the Second Protective Order was dissolved and individuals who had reviewed the PIN File could speak to the press and others about these allegations. The individuals mentioned in the PIN File could face public ridicule and irreparable damage to their reputations on the basis of uncharged and unproven conduct. Indeed, this harm not only satisfies the standard of good cause, but also satisfies the more demanding compelling reason standard required when documents are filed with the court attached to dispositive motions. *See In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d at 427 (holding that uncharged allegations against a retired priest met the compelling reasons standard for continuing to protect documents containing these accusations).

Furthermore, there is a strong reliance interest in the protective order and thus a presumption exists against dissolving the order. *See Foltz*, 331 F.2d at 1137. Defendant Gillespie moved to compel the production of the PIN File in July 2013. (Doc. No. 155.) The Court denied her motion to compel, finding that Defendant Gillespie had failed to make "a *prima facie* showing of materiality. Gillespie does not state how an alleged leak or the alleged destruction of evidence would be material or relevant to her defense in this case." (Doc. No. 201 at 3.) However, notwithstanding the Court's order and out of an abundance of caution, in May 2014 the United

States made the PIN File available to all defendants within the protections of the Second Protective Order. The Government relied on the existence of this Second Protective Order in deciding to make these documents available to the defendants. Dissolving the Second Protective Order now would undermine criminal defendants' and the Court's interest in a transparent and fair criminal discovery process.

Since there are specific and tangible harms that will result from the dissolution of the Second Protective Order and there is a legitimate public policy concern that ignoring the reliance-interest the parties had on this order will chill the production of materials in later cases, the Second Protective Order should also remain in force.[1]

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny the motion to dissolve both protective orders.

                            ANDREW WEISSMANN
                            Chief
                            CHARLES LA BELLA
                            Deputy Chief
                            United States Department of Justice,
                            Criminal Division, Fraud Section

                            */s/ Thomas B.W. Hall*
                            THOMAS B.W. HALL
                            ALISON L. ANDERSON
                            Trial Attorneys
                            United States Department of Justice
                            Criminal Division, Fraud Section

---

[1] The documents protected by the Second Protective Order should also be requested via the FOIA process discussed *supra* instead of via an "end-run" around the proper FOIA procedures. However, the posture of the First and Second Protective Orders is slightly different in that defense counsel currently have *possession* of the documents covered by the First Protective Order, while some defense counsel have only *reviewed* the documents covered by the Second Protective Order. However, keeping the Second Protective Order in place would prevent defense counsel from disclosing the contents of the documents they reviewed to persons not affiliated with the defense team. (*See* Doc. No. 283 at ¶ 5.)

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
# -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:13-cr-00018-JCM-GWF |
| Plaintiff, | |
| v. | **CERTIFICATE OF SERVICE** |
| LEON BENZER, *et al.* | |
| Defendants. | |

I, the undersigned, hereby certify that this pleading was filed with the clerk of court via ECF and will be served electronically via ECF on all parties that have entered their appearances in this case.

Dated: June 26, 2015

Respectfully submitted,

*/s/ Thomas B.W. Hall*
THOMAS B.W. HALL
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section