1

2

3

4                        UNITED STATES DISTRICT COURT

5                             DISTRICT OF NEVADA

6                                    * * *

7    UNITED STATES OF AMERICA,                 Case No. 2:13-CR-18 JCM (GWF)

8                            Plaintiff(s),                ORDER

9          v.

10   LEON BENZER, et al.,

11                           Defendant(s).

12

13         Presently before the court is Leon Benzer's ("defendant") emergency motion for

14   compassionate release (ECF No. 917), which counsel supplemented (ECF No. 919).  The United

15   States of America ("the government") filed a response (ECF No. 921), to which defendant replied

16   (ECF No. 923).

17   I.    **Background**

18         As relevant to this motion, the court originally sentenced defendant to 188 months'

19   incarceration on April 10, 2019, for orchestrating a homeowners'-association-take-over

20   conspiracy that resulted in more than $12 million in losses to its victims.  (ECF Nos. 729; 750).

21   After defendant's appeal (ECF No. 747), the court resentenced him to a total of 151 months'

22   incarceration (ECF No. 860; 862).  While defendant has been incarcerated, the novel strain of

23   coronavirus and COVID-19, the resultant respiratory disease, have run rampant throughout the

24   country and the world.  While the court need not reiterate the well-known effects COVID-19 has

25   had on day-to-day life, certain populations are particularly at risk of "severe illness" from the virus:

26

27

28

**James C. Mahan**
**U.S. District Judge**

1    the elderly, asthmatic, immunodeficient, and people with HIV. *See* Center for Disease Control,

2    *People Who Are at Higher Risk for Severe Illness,* (June 9, 2020).[1]

3        The CDC's list of at-risk persons has expanded, and new studies on COVID-19 vis-à-vis

4    comorbidities continue to be promulgated. *Id.*; *see also*, *e.g.,* Xianxian Zhao, et al., *Incidence,*

5    *clinical characteristics and prognostic factor of patients with COVID-19: a systematic review and*

6    *meta-analysis* (March 20, 2020);[2] Safiya Richardson, et al., *Presenting Characteristics,*

7    *Comorbidities, and Outcomes Among 5700 Patients Hospitalized With COVID-19 in the New York*

8    *City Area* (April 22, 2020).[3]

9        Defendant moves this court for compassionate release, arguing that his underlying medical

10   conditions—chronic obstructive pulmonary disease ("COPD"), pulmonary hypertension, high

11   blood pressure, and type two diabetes—make him more susceptible to COVID-19. (ECF No. 100).

12   In his reply brief, defendant indicates he has asthma. (*See generally* ECF No. 104).

13       While the government acknowledges that defendant has exhausted his administrative

14   remedies, as required by the First Step Act, 18 U.S.C. § 3582(c)(1)(A), it argues that the court

15   should deny the motion because, in light of his age, his conditions do not substantially diminish

16   his ability to provide self-care within the environment of a correctional facility. (ECF No. 103 at

17   4–8, 10–11). The government further argues that the § 3553(a) sentencing factors weight against

18   compassionate release. *Id.* at 11–13.

19   **II.    Legal Standard**

20       "Even though courts ordinarily have the inherent authority to reconsider its prior orders,

21   such authority does not exist when there is an 'express rule to the contrary.'" *United States v.*

22   *Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999). One such contrary rule is relevant here:

23   "A court generally may not correct or modify a prison sentence once it has been imposed." *United*

24

25

26      [1] Available      at      https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

27      [2] Available                                                                      at
     https://www.medrxiv.org/content/10.1101/2020.03.17.20037572v1.full.pdf.

28

     [3] Available at https://jamanetwork.com/journals/jama/fullarticle/2765184.

**James C. Mahan**
**U.S. District Judge**

1    *States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (citing 18 U.S.C. § 3582(c)).  Instead, the court

2    may modify a sentence only when expressly authorized by statute.

3         The court is expressly authorized to modify a sentence under the compassionate release

4    provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391,

5    132 Stat. 5194 (Dec. 21, 2018).   18 U.S.C. § 3582(c)(1)(A).   However, courts may consider

6    compassionate release only "upon motion of the Director of the Bureau of Prisons . . . ."  *Id.*  If a

7    defendant wants to file such a motion with the court, he must fully exhaust his administrative

8    remedies before doing so.  *Id.*  Since the enactment of the First Step Act, a defendant may file a

9    compassionate-release motion if his application to the BOP goes unanswered for thirty days.  *Id.*

10        To be eligible for compassionate release, a defendant must demonstrate: (1) the existence

11   of extraordinary and compelling reasons, and (2) that he is not a danger to the community. 18

12   U.S.C. § 3582(c)(1)(A); USSG § 1B1.13.  Under USSG § 1B1.13, "extraordinary and compelling

13   reasons" include, amongst other things, terminal illnesses and medical conditions "that

14   substantially diminishes the ability of the defendant to provide self-care within the environment of

15   a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13.

16   **III.     Discussion**

17        The parties extensively brief whether the 30-day BOP-exhaustion requirement is

18   jurisdictional or simply a claims-processing rule.  (*See* ECF Nos. 919; 921; 923).  The court need

19   not reach this issue, as the parties agree that defendant's 30-day period ended on June 13.  (ECF

20   Nos. 919 at 6; 921 at 8).

21        The court need only consider whether there are extraordinary and compelling reasons that

22   justify compassionate release.  If there are, the court also considers the sentencing factors under

23   18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (allowing the court to order compassionate

24   release only "after considering the factors set forth in section 3553(a) to the extent that they are

25   applicable").

26        Defendant contends his chronic conditions—diabetes, hypertension, and obesity—warrant

27   immediate release from custody.  (ECF No. 919 at 21–22).

28

**James C. Mahan**
**U.S. District Judge**

1  The court acknowledges the significant public policy implications of feely granting home

2  confinement to any inmate who expresses a fear of contracting COVID-19.  Such a position is

3  untenable because each and every inmate rightfully fears contracting COVID-19—just as each and

4  every American does when he or she must venture from their homes.  However, the court also

5  acknowledges that the fear of COVID-19 in the penological context is justifiably acute.  This

6  requires the court to, as best it can, strike a delicate balance.  Indeed, this very balance is why the

7  BOP is ordinarily given the first opportunity to review an inmate's request for compassionate

8  release.

9  While the court understands defendant's concern regarding COVID-19, the court does not

10  find that defendant's preexisting medical conditions are sufficiently "extraordinary or compelling"

11  such that compassionate release is immediately necessary.  Defendant's conditions are ubiquitous

12  in society such that release in this case risks opening the compassionate-release floodgates.

13  On an individual level, defendant has not shown that these conditions are so severe or

14  unattended while incarcerated to pose a risk that is any more imminent than that which the country

15  at large faces.  To the contrary, the government notes that defendant's age (53) does not put him

16  at risk of contracting COVID-19 and that "medical staff have evaluated him and found his

17  underlying conditions to be 'under control.'"  (ECF No. 921 at 20).  The medical department at

18  defendant's facility is aware of defendant's conditions and advises that they are "currently well

19  controlled and will continue to be managed and monitored."  *Id.* at 21.  Thus, the court finds that

20  defendant's medical conditions do not "substantially diminish[] [his] ability . . . to provide self-

21  care within the environment of a correctional facility . . . ."[4]  *See* USSG § 1B1.13.

22  Further, the court also considers the sentencing factors in § 3553(a).  These include, *inter*

23  *alia*, "the nature and circumstances of the offense and the history and characteristics of the

24  defendant"; "the need for the sentence imposed to reflect the seriousness of the offense, to promote

25  respect for the law, and to provide just punishment for the offense"; and "the need to avoid

26

27

28  [4] This conclusion is further supported by the government's unrefuted representation that there are no confirmed cases of COVID-19 in defendant's facility. (ECF No. 921 at 15–17).

**James C. Mahan**
**U.S. District Judge**

1    unwarranted sentence disparities among defendants with similar records who have been found

2    guilty of similar conduct."  18 U.S.C. §§ 3553(a)(1), (2)(A), (6).

3          The court also finds that the § 3553(a) do not support compassionate release.  Defendant

4    has served only served 54 months of his 151-month sentence.  The sentence is appropriate to reflect

5    the severity of his fraud scheme, which cost its victims in excess of $12 million, and its attendant

6    conduct:

> Benzer led and recruited more than thirty-five people—taking advantage of his family members, girlfriends, and friends that were vulnerable and down on their luck—into a scheme where he was the only one to receive millions of dollars that they stole from victim homeowners.  Benzer committed these crimes just so that he could spend money lavishly on himself.  Benzer and his co-conspirators did not just defraud homeowners, they terrorized them.  Benzer hired men to bring guns to a HOA meeting in order to intimidate the homeowners.  Benzer hired attorneys and police officers to harass homeowners.  Benzer and his co-conspirators took over three HOAs, drained Vistana of its funds, and positioned themselves to takeover many more HOAs.  The only thing that stopped them was the FBI.

(ECF No. 921 at 21–22).

        Because defendant's conditions are well managed and under control while incarcerated and

the § 3553(a) factors cut against compassionate release, the court denies defendant's motion.

**IV.      Conclusion**

        Accordingly,

        IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's emergency

motion for compassionate release (ECF Nos. 917; 919) be, and the same hereby is, DENIED.

        DATED June 15, 2020.

                                         _____
                                         UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 5 -